No. 24-40632


IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT


UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JUAN JOSE PONCE,
Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Texas


————————————

BRIEF FOR APPELLANT

————————————


PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## CERTIFICATE OF INTERESTED PERSONS

United States v. Juan Jose Ponce,
No. 24-40632

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1.  The Honorable Nelva Gonzalez Ramos, United States District Judge.

2.  Mr. Juan Jose Ponce, Defendant-Appellant.

3.  United States of America, Plaintiff-Appellee.

4.  Counsel for Plaintiff-Appellee: United States Attorney Nicholas J. Ganjei; former United States Attorney Alamdar S. Hamdani; and Assistant United States Attorneys Barbara J. De Peña (in district court) and Carmen Castillo Mitchell.

5.  Counsel for Defendant-Appellant: Federal Public Defender Philip G. Gallagher; and Assistant Federal Public Defenders Rachel E. Braver (in district court) and Scott A. Martin (on appeal).

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

s/ Scott A. Martin
SCOTT A. MARTIN

i

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellant Juan Jose Ponce requests oral argument. This appeal raises a fact-intensive question regarding the district court's disposition of his motion to suppress evidence. Counsel believes that oral argument would be of benefit to the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

REQUEST FOR ORAL ARGUMENT .................................................. ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF CITATIONS ........................................................................v

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUE.................................................................2

STATEMENT OF THE CASE...................................................................3

      A.     Background (procedural)........................................................3

      B.     Relevant factual history........................................................5

      C.     Ruling presented for review ..................................................6

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT ......................................................................................8

**ISSUE RESTATED**:  The district court erred in denying Mr. Ponce's motion to suppress evidence of an undocumented person who was found hiding in a speaker box located in the cargo area of his hatchback SUV ....................................................................................................8

      A.     Standard of review............................................................8

# TABLE OF CONTENTS – (cont'd)

**Page**

B.    The Border Patrol agent's search of the speaker box
      exceeded the scope of Mr. Ponce's verbal consent to open
      the back hatch of the SUV...................................................................8

C.    The agent did not have probable cause to believe that the
      SUV or speaker box contained evidence of a crime ...........................11

CONCLUSION ........................................................................................15

CERTIFICATE OF SERVICE .............................................................16

CERTIFICATE OF COMPLIANCE.....................................................17

# TABLE OF CITATIONS

**Page**

## CASES

*Florida v. Harris*, 568 U.S. 237 (2013) ................................................. 12

*Florida v. Jimeno*, 500 U.S. 248 (1991) .................................................. 9

*United States v. Cotton*, 722 F.3d 271
  (5th Cir. 2013) ..................................................................................... 10

*United States v. Elliott*, 107 F.3d 810
  (10th Cir. 1997) ................................................................................... 10

*United States v. Fishel*, 467 F.3d 855
  (5th Cir. 2006) ..................................................................................... 13

*United States v. Iraheta*, 764 F.3d 455
  (5th Cir. 2014) .................................................................................... 8-9

*United States v. Keller*, 123 F.4th 264
  (5th Cir. 2024) ....................................................................................... 8

*United States v. Lujan*, No. 24-50030, 2025 WL 673435
  (5th Cir. Mar. 3, 2025) (unpublished) ................................................ 13

*United States v. Martinez*, 102 F.4th 677
  (5th Cir. 2024) ................................................................................ 12-13

*United States v. McKinney*, 980 F.3d 485
  (5th Cir. 2020) ....................................................................................... 8

*United States v. Mendoza-Gonzalez*, 318 F.3d 663
  (5th Cir. 2003) ....................................................................................... 8

*United States v. Pack*, 612 F.3d 341
  (5th Cir. 2010) ..................................................................................... 14

# TABLE OF CITATIONS – (cont'd)

**Page**

## CASES – (cont'd)

*United States v. Peña-Gonzalez*, 618 Fed. Appx. 195
  (5th Cir. 2015) (unpublished) ................................................................ 14

## STATUTES AND RULES

8 U.S.C. § 1324(a)(1)(A)(ii) ........................................................................ 3

8 U.S.C. § 1324(a)(1)(A)(v)(II) .................................................................. 3

8 U.S.C. § 1324(a)(1)(B)(ii) ........................................................................ 3

28 U.S.C. § 1291 .......................................................................................... 1

Fed. R. App. P. 4(b)(1)(A)(i) ...................................................................... 1

5th Cir. R. 28.2.1 .......................................................................................... i

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas.

The judgment appealed from was entered on the docket on September 24, 2024. Mr. Ponce timely filed his notice of appeal on September 25, 2024. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUE

Whether the district court erred in denying Mr. Ponce's motion to suppress evidence of an undocumented person who was found hiding in a speaker box located in the cargo area of his hatchback SUV.

## STATEMENT OF THE CASE

**A.    Background (procedural).**

On June 15, 2023, a federal grand jury in the Corpus Christi Division of the United States District Court for the Southern District of Texas returned a single-count indictment charging Mr. Ponce with illegally transporting an undocumented person in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) and (B)(ii). ROA.24. The undocumented person was found hiding inside a speaker box located in the cargo area of a hatchback Sports Utility Vehicle (SUV), driven by Mr. Ponce, that was stopped in the primary inspection lane of the Border Patrol checkpoint near Sarita, Texas. ROA.110-11.

Mr. Ponce moved to suppress "any and all evidence and statements made by [him]," arguing that "the search of the vehicle was done without probable cause or valid consent[.]" ROA.53, 55. He contended, *inter alia*, that "lifting the top of the speaker box constituted a search . . .  for which the agent lacked probable cause," and that his "consent [given] to the agent to open the back hatch [of the SUV] did not reach the items in the cargo area." ROA.55-56.

An evidentiary hearing was held before the district court on December 7, 2023. ROA.158-245 (hearing transcript). At the hearing, the government presented the testimony of Border Patrol Agent Carlos Garcia. ROA.161-203, 226-27. The defense, in turn, presented the testimony of Mr. Ponce. ROA.205-25.

3

Five government exhibits were admitted at the hearing. ROA.109, 244, 325-29. These exhibits were photographs of the exterior and interior of the SUV (Gov't Ex. 1-2), a photograph of the top of the speaker box (Gov't Ex. 3), and photographs of the undocumented person who was found in the speaker box (Gov't Ex. 4-5). ROA.325-29.

On January 25, 2024, the district court issued a written order denying the motion to suppress. ROA.110-20. The court found, *inter alia*, that "the scope of Ponce's consent [to a search] extended to the speaker box and supported its search." ROA.119. The court also concluded that, "even if Ponce's consent did not extend to the speaker box[,] . . . Agent Garcia had probable cause to believe that Ponce's vehicle contained evidence of a crime, which justified a warrantless search of the speaker box inside." ROA.119.

Thereafter, on February 22, 2024, Mr. Ponce entered a conditional guilty plea to the sole count in the indictment, pursuant to a written plea agreement. He expressly reserved his right to appeal the denial of his motion to suppress. ROA.250, 287, 291-92, 298, 321 (hearing transcript); *see also* ROA.332-33 (plea agreement).

On September 20, 2024, the district court sentenced Mr. Ponce to a two-year term of probation. ROA.131-33, 319-20. The court did not impose a fine but did impose a $100 special assessment. ROA.134, 319-20. Mr. Ponce filed a timely notice of appeal. ROA.136-37.

**B.    Relevant factual history.**

For purposes of this appeal, Mr. Ponce does not (unless noted below) dispute the following general facts, found by the district court, relating to the general sequence of events that occurred during the checkpoint stop:

> Juan Jose Ponce entered the primary inspection area of the Border Patrol checkpoint near Sarita, Texas at approximately 5:00 a.m. on May 19, 2023. Ponce drove a black Chevrolet Tahoe—a hatchback Sports Utility Vehicle (SUV) with a roof rack. When Ponce pulled in, Border Patrol Agent Carlos Garcia conducted an immigration inspection. Agent Garcia has worked as an agent at this checkpoint for about fifteen years.
>
> Agent Garcia saw that Ponce was wearing a surgical face mask. [ROA.164, 172-76.] Agent Garcia asked Ponce if he was a citizen. Ponce responded that he was a legal permanent resident, and he gave his permanent resident card to the agent. Agent Garcia then asked Ponce to remove his face mask so he could match Ponce's face to the identification card. Ponce complied. [ROA.191-92.] Agent Garcia asked Ponce if anyone else was in the car. Ponce said he was traveling alone. [ROA.192-94.]
>
> Agent Garcia believed Ponce was nervous. [ROA.166, 192, 194-95.] In his experience, people driving through the checkpoint usually talked to him more than Ponce did. [ROA.166-67, 188-89.] Agent Garcia also noticed that there was a ladder inside the SUV, which he found strange because the SUV had a roof rack. [ROA.165, 176-80.] In Agent Garcia's experience, people generally store ladders there when traveling. [ROA.165, 179.]
>
> Agent Garcia then asked Ponce for consent to search his car.[1] However, no one remembers what words Agent Garcia said. Agent

---

[1] As discussed in the Argument section below, Mr. Ponce's "consent" was limited to opening the back hatch of the SUV—thus allowing the officer to glance inside and perhaps see, from the rear of the car, how things were packed or arranged in the cargo area. The record does not support that Mr. Ponce consented to a general "search [of] his car."

Garcia believes he either asked Ponce if he could look in the back or open the back hatch. [ROA.166-67, 197.] Ponce believes Agent Garcia told him he was going to open the back hatch without asking permission. [ROA.224-25, 227.] Ponce claims that if Agent Garcia asked him a question, he asked only if he could open the back hatch, not look inside. [ROA.213-14, 224-25.] Whatever was said, Ponce replied that he could open it and unlocked the back hatch. [ROA.166-67, 198, 213-16.]

So, Agent Garcia opened the back hatch. When Agent Garcia looked inside, he saw a ladder extending from the back to the front seat, some equipment, and a large speaker box. Gov't Ex. 2 [ROA.326]. Agent Garcia noticed that the top screws on the lid of the speaker box were not fully screwed in and were sticking up. Gov't Ex. 3 [ROA.327; *see also* ROA.168-70, 184-85, 200-01.] Agent Garcia then reached in and lifted the lid of the speaker box. [ROA.170.] Ponce did not object. [ROA.217-18.] Agent Garcia saw the top of a person's head inside. [ROA.171, 188.] The SUV was then driven to the secondary inspection area, where Karen Marisol Vasquez-Ramirez, an [undocumented person], was found inside the speaker box.

ROA.110-11. Additional facts relevant to this appeal are set forth in the Argument section below.

## C.    Ruling presented for review.

In this appeal, Mr. Ponce challenges the district court's denial of his motion to suppress evidence.

## SUMMARY OF THE ARGUMENT

The district court erred in denying Mr. Ponce's motion to suppress evidence of an undocumented person who was found hiding in a speaker box located in the cargo area of his hatchback SUV.

The Border Patrol agent's search of the speaker box exceeded the scope of Mr. Ponce's verbal consent to open the back hatch of the SUV. Further, the agent did not have probable cause to believe that the SUV or speaker box contained evidence of a crime.

This Court should reverse the district court's order denying the motion to suppress, vacate Mr. Ponce's conviction and sentence, and remand for further appropriate proceedings.

# ARGUMENT

**ISSUE RESTATED**: The district court erred in denying Mr. Ponce's motion to suppress evidence of an undocumented person who was found hiding in a speaker box located in the cargo area of his hatchback SUV.

## A.    Standard of review.

"When reviewing the denial of a motion to suppress, [this Court] review[s] questions of law *de novo* and findings of fact for clear error." *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020).

"[T]he scope of consent to a search is a question of law that [this Court] review[s] *de novo*." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014). So, too, is a determination that probable cause existed. *See United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024).

## B.    The Border Patrol agent's search of the speaker box exceeded the scope of Mr. Ponce's verbal consent to open the back hatch of the SUV.

"The Fourth Amendment . . . prohibits a search of the vehicle in the absence of a warrant, with only two exceptions." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003). "The agents must have either the consent of the owner to conduct the search or probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Id.*

8

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Iraheta*, 764 F.3d at 462 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). Thus, "based on the facts, consent must reasonably be understood to extend to a particular container." *Id.* "Generally, there is no requirement for additional authorization to search such containers." *Id.*

Here, in its written order (ROA.110-20), the district court made the following findings relevant to the scope of Mr. Ponce's verbal consent:

> [N]o one remembers what words Agent Garcia said [when asking for consent]. Agent Garcia believes he either asked Ponce if he could look in the back or open the back hatch. [ROA.166-67, 197.] Ponce believes Agent Garcia told him he was going to open the back hatch without asking permission. [ROA.224-25, 227.] Ponce claims that if Agent Garcia asked him a question, he asked only if he could open the back hatch, not look inside. [ROA.213-14, 224-25.] *Whatever was said, Ponce replied that he could open it and unlocked the back hatch.* [ROA.166-67, 198, 213-16.]

ROA.111 (italics added).

These findings, which Mr. Ponce does not contest, support only that Mr. Ponce consented to a request to "open the back hatch"—thus allowing the officer to glance inside and perhaps see, from the rear of the car, how things were packed or arranged in the cargo area. *See* ROA.119 (court order) ("At minimum, Ponce consented to Agent Garcia opening the back hatch of his SUV and glancing

9

inside."). To a typical reasonable person, an agent's request to "open the back hatch" indicates that the agent wants to do just that (and not look through each closed container in the vehicle). *Cf. United States v. Cotton*, 722 F.3d 271, 276 (5th Cir. 2013) (observing that, when an officer requests to look through the trunk of a car but adds that he does not want to look through each item and just wants to see how things were packed or packaged, he exceeds the scope of the consent by unzipping and searching the bags in the trunk) (citing *United States v. Elliott*, 107 F.3d 810, 812, 815-16 (10th Cir. 1997)). That is why Mr. Ponce "believed that Agent Garcia would just glance inside the cargo compartment without opening the speaker box," as the district court recognized in its written order. ROA.117.

To be sure, Mr. Ponce did not object when Agent Garcia opened the speaker box that was located in the cargo area. But Mr. Ponce explained, at the suppression hearing, that he did not know that he had the right to say no to the agent; if he had known, he would have objected and told the agent, "Listen, you don't have to go around destroying my stuff." ROA.218 (testimony of Mr. Ponce). His failure to object to the search of the speaker box "should not be treated as *expanding* [his] more limited consent, especially when [as here] the circumstances suggest some other possible reason for [his] silence." *Cotton*, 722 F.3d at 277 (italics in original).

For these reasons, the district court erred when it determined that "the scope of Ponce's consent extended to the speaker box and supported its search." ROA.119.

**C.    The agent did not have probable cause to believe that the SUV or speaker box contained evidence of a crime.**

The district court concluded, based on the totality of the circumstances, that, "even if Ponce's consent did not extend to the speaker box . . . Agent Garcia had probable cause to believe that Ponce's vehicle contained evidence of a crime[, *i.e.*, an undocumented person], which justified a warrantless search of the speaker box inside." ROA.119-20. The circumstances relied on by the court were as follows:

> Once Agent Garcia [opened the back hatch], he noticed the speaker box with its lid unscrewed. [ROA.169, 201.] When Agent Garcia saw the screws sticking up, he believed a person could be hiding inside. [ROA.169-70.] Although he had never found a person hiding in a speaker box before, he testified that hiding aliens in speaker boxes is common at the checkpoint. [ROA.170, 200.]
>
> . . .
>
> Ponce wore a surgical face mask despite claiming to be alone, which Agent Garcia believed was a sign that someone else was in the vehicle. [ROA.164-65, 172-73.] Additionally, Agent Garcia believed Ponce was nervous. [ROA.166, 194-95.] Plus, there was clutter around the speaker box, which in Agent Garcia's experience, is a tactic people often use to hide aliens when transporting them. [ROA.169, 200.]

ROA.119-20.

Contrary to the district court's conclusion, Agent Garcia did not, prior to opening the speaker box, have probable cause to believe that the SUV or the speaker box contained evidence of alien transporting. "An agent has probable cause to search when, considering the totality of the circumstances, the facts available to him would

11

warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up); *see also United States v. Martinez*, 102 F.4th 677, 684 (5th Cir. 2024) (same). The information that Agent Garcia had, prior to opening the speaker box, did not rise to that level.

Had Agent Garcia only glanced inside the cargo compartment (without opening the speaker box), "he would not have found any incriminating evidence." ROA.117 (court order) (acknowledging this). The agent was not able to see the head, hair or clothing of the person hiding in the speaker box, and could not hear any noises coming from it (e.g., knocking or speaking). ROA.186-87. Although the screws in the speaker box were not fully screwed in and were sticking up, *see* ROA.168-70, 184-85, 200-01, Mr. Ponce told the agent that the speaker worked. ROA.210. But the agent did not ask Mr. Ponce to turn up the music (to see whether the speaker worked) before opening the speaker box. ROA.186.

Any suspicion of the "clutter" around that speaker box—which consisted of the ladder, helmet, and the tools that Mr. Ponce uses for his construction work—was diminished by the following facts: (1) the agent did not ask Mr. Ponce if he was on his way to a construction job[2]; (2) the speaker box was visible, not buried by the

---

[2] At the suppression hearing, Mr. Ponce testified that he works in construction and uses the ladder and tools for work; and, at the time of the stop, he was on his way to New Braunfels, Texas, to help build a bank there. ROA.207-09.

clutter; and (3) the agent has seen "cars with clutter [and] no aliens," because "[p]eople keep messy cars." ROA.179-83, 202-03.

As for the surgical mask, the agent admittedly did not know whether Mr. Ponce was wearing the mask to protect himself (or the agent) from getting sick during their interactions at the checkpoint. ROA.174-76; *see also* ROA.173, 221 (testimony of Mr. Ponce, explaining that he wore the mask "on account of the pandemic" and would wear it whenever he "wanted to talk to someone"). And Mr. Ponce did remove the mask when the agent asked him to do so. ROA.191-92.

Finally, although Agent Garcia believed that Mr. Ponce was nervous because he was "quiet" and not "interacting" very much with the agent, *see* ROA.166, 194-95, that sort of behavior, without other physical signs or symptoms (*e.g.*, heavy breathing or a pulsing carotid artery), would seem not to "rise to the level of nervousness this Court has generally observed as contributing [even] to [the lesser standard of] reasonable suspicion."[3] *United States v. Lujan*, No. 24-50030, 2025 WL 673435, at *7 (5th Cir. Mar. 3, 2025) (unpublished); *compare id.* (speaking "erratically, fast" and acting "fidgety" did not contribute to reasonable suspicion), *with United States v. Fishel*, 467 F.3d 855, 856 (5th Cir. 2006) ("extremely nervous

---

[3] "Reasonable suspicion is a low threshold and requires only some minimal level of objective justification[; it] demands something more than a mere hunch but considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Martinez*, 102 F.4th at 684 (cleaned up).

with a tremor in his voice"); *United States v. Pack*, 612 F.3d 341, 345 (5th Cir. 2010) ("breathing heavily, his hands were shaking, and his carotid artery was visibly pulsing"); *United States v. Peña-Gonzalez*, 618 Fed. Appx. 195, 196 (5th Cir. 2015) (unpublished) ("carotid artery visibly pulsed, his faced twitched, and his breathing was labored").

For these reasons, this Court should reverse the district court's order denying the motion to suppress, vacate Mr. Ponce's conviction and sentence, and remand for further appropriate proceedings.

# CONCLUSION

This Court should reverse the district court's order denying the motion to suppress, vacate Mr. Ponce's conviction and sentence, and remand for further appropriate proceedings.

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

s/ Scott A. Martin
SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## CERTIFICATE OF SERVICE

All parties required to be served with copies of this document have been so served by filing via the Fifth Circuit ECF filing system.

s/ Scott A. Martin
SCOTT A. MARTIN

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,940 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3.      This document complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.      This document complies with the electronic submission of 5th Cir. R. 25.2.1, because it is an exact copy of the paper document. This document was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

5.      This document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

                                                            s/ Scott A. Martin
                                                            SCOTT A. MARTIN